

FILED

JUL - 5 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JAMES R. SHERMAN,

    Plaintiff,

v.                           Civil Action No. 2:10cv567

LITTON LOAN SERVICING, L.P.

and

GLASSER AND GLASSER, P.L.C.,

    Defendants.

## OPINION AND ORDER

This matter is currently before the Court on several motions: (1) defendant Glasser and Glasser P.L.C.'s ("Glasser") motion to dismiss plaintiff James R. Sherman's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted; (2) defendant Litton Loan Servicing, L.P.'s ("Litton" and, collectively with Glasser, the "defendants") motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) or, in the alternative, for judgment on the pleadings pursuant to Rule 12(c); and (3) plaintiff's motion to remand this matter to state court pursuant to 28 U.S.C. § 1447(c). Plaintiff filed no response to Glasser's motion. Litton's motion was fully briefed, and only Litton filed an opposition to plaintiff's

motion, to which plaintiff did not reply. Although Litton has filed a request for a hearing on these motions, after examination of the briefs and the record, the Court has determined that a hearing on the instant motions is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court **GRANTS** Glasser's motion, **GRANTS** Litton's motion, **DENIES** plaintiff's motion as moot, and **DISMISSES** this matter, with prejudice.

## I.   FACTUAL ALLEGATIONS[1]

On November 30, 2006, plaintiff took out a first lien mortgage in the original principal amount of $530,000.00 (the

---

[1] The facts recited herein are drawn from plaintiff's complaint and the various underlying documents upon which it relies, which were attached to the parties' briefs on Litton's motion. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." Gasner v. County of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995); accord Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (unpublished per curiam decision); SunTrust Bank v. Aetna Life Ins. Co., 251 F. Supp. 2d 1282, 1287 (E.D. Va. 2003) (quoting the above language from Gasner); see also Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). The complaint's factual allegations are assumed true for the purpose of deciding Litton's motion, but do not constitute factual findings for any other purpose. See, e.g., Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

2

"mortgage") in connection with his purchase of a tract of land at 533 General Booth Boulevard in Virginia Beach, Virginia (the "Property"). Compl. ¶¶ 1-2. Litton was the servicer of the mortgage. Id. ¶ 2. Plaintiff made timely payments on the mortgage until August 2009, when he "foresaw a decrease in his income, and requested a loan modification from [Litton] for the month of September, 2009." Id. ¶¶ 4-6. Plaintiff received from Litton a Loan Modification Workout Plan (the "Plan"), which he returned with supporting documentation and a check for his first month's trial period payment. Id. ¶¶ 7-8. After extensive correspondence and conversations with various Litton personnel, and several additional trial period payments, plaintiff's request for a loan modification was denied, and Litton provided plaintiff with a notice of default and intent to accelerate. Id. ¶¶ 9-33. Plaintiff continued making payments to Litton after his loan modification was denied. Id. ¶¶ 32-36. Glasser thereafter became the substitute trustee for the Property, and plaintiff received notice from Glasser on October 15, 2010 "that his home would be foreclosed on October 29, 2010 at 8:45 a.m." Id. ¶¶ 37-38.

## II. PROCEDURAL HISTORY

This matter was initiated on October 27, 2010, when plaintiff filed a Bill of Complaint and Petition for Preliminary Injunction against defendants in the Circuit Court of the City

3

of Virginia Beach, Virginia (the "state court") to prevent the aforementioned foreclosure sale of the Property. Docket No. 1 at 1-2 & Compl. ¶ 39. On October 28, 2010 the state court granted a temporary injunction enjoining defendants from selling the Property for thirty days, contingent upon a $20,000 surety bond. Docket No. 15 Ex. A at 1.

Litton, with the consent of Glasser, removed this matter to this Court on November 18, 2010, alleging subject-matter jurisdiction on the basis of both a federal question—to wit, plaintiff's purported assertion of claims arising under the federal Home Affordable Modification Program ("HAMP")—and diversity of citizenship. Docket No. 1 at 1 & ¶¶ 12-30. In this latter connection, Litton claimed in its notice of removal that Glasser was merely a nominal defendant, fraudulently joined by plaintiff in order to destroy complete diversity of citizenship between the parties. Id. ¶¶ 27-29. Litton also claimed that the Court could exercise supplemental jurisdiction over plaintiff's claims arising under Virginia state law. Id. ¶ 19.

Glasser filed its motion to dismiss and a memorandum in support on November 30, 2010. Docket Nos. 6-7. As previously noted, plaintiff filed no response to Glasser's motion. Glasser then filed a request for a hearing on its motion to dismiss. Docket No. 16.

4

Litton filed its motion to dismiss or for judgment on the pleadings, along with a memorandum in support, on February 11, 2011. Docket Nos. 11–12. Plaintiff filed an opposition to Litton's motion. Docket No. 15. Litton then filed a reply in further support of its motion. Docket No. 17.

Plaintiff filed his motion to remand, along with a memorandum in support, on May 6, 2011. Litton filed an opposition to plaintiff's motion. However, Glasser filed no response to plaintiff's motion, and plaintiff filed no reply to Litton's opposition. Litton filed a request for a hearing on its motion and plaintiff's motion on June 21, 2011.

### III. STANDARD OF REVIEW

#### A. Subject-Matter Jurisdiction

As noted above, Litton removed this matter to this Court on the basis of both this Court's "federal question" jurisdiction and its "diversity" jurisdiction. In order for this Court to have "federal question" jurisdiction, the matter must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. According to the United States Court of Appeals for the Fourth Circuit, "[t]here is no 'single, precise definition' of what it means for an action to 'arise under' federal law." Verizon Md., Inc. v. Global Naps, Inc., 377 F.3d 355, 362 (4th Cir. 2004) (quoting Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986)). However,

[t]he Supreme Court has recognized § 1331 jurisdiction
in a variety of cases, such as (1) when a federal
right or immunity forms an essential element of the
plaintiff's claim; (2) when a plaintiff's right to
relief depends upon the construction or application of
federal law, and the federal nature of the claim rests
upon a reasonable foundation; (3) when federal law
creates the cause of action; and (4) when the
plaintiff's right to relief necessarily depends on
resolution of a substantial question of federal law.

Id. (internal citations and quotations omitted). Litton claims
that plaintiff's repeated references to HAMP render his claims
necessarily federal in nature.

This Court also properly has "original jurisdiction of all
civil actions where the matter in controversy exceeds the sum or
value of $75,000, exclusive of interest and costs, and is
between . . . citizens of different States." 28 U.S.C. § 1332.
Litton alleges in its notice of removal that the citizenship of
the real parties in interest—i.e., plaintiff and Litton, but not
Glasser—is completely diverse, and that the matter in
controversy—i.e., the value of the Property—far exceeds $75,000.

Litton claims that this Court may also properly exercise
supplemental jurisdiction over plaintiff's state-law causes of
action in this matter. The Court may exercise such supplemental
jurisdiction "in any civil action of which [it] ha[s] original
jurisdiction . . . over all other claims that are so related to
claims in the action within such original jurisdiction that they

form part of the same case or controversy.") 28 U.S.C. § 1367(a).

## B. Rule 12(b)(6)

Rule 12(b)(6) permits a defendant to move for dismissal of the claims against it if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In assessing such a motion, the court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A complaint must be dismissed, however, if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

7

While the court must construe the facts in the light most favorable to the plaintiff, the court is not obligated to accept the complaint's legal conclusions. See Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). Dismissal pursuant to Rule 12(b)(6) is appropriate when, upon considering the facts set forth in the complaint as true and construing the facts in the light most favorable to the non-moving party, there is no basis on which relief can be granted. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). As always, however, this standard is balanced in light of Rule 8(a)'s requirement of only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### C. Rule 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In light of the fact that Litton filed an answer to the complaint on November 18, 2010 (prior to the filing of its motion), its motion is properly filed not under Rule 12(b)(6), but instead under Rule 12(c). See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (citing Burbach Broad. Co v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002) & Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). However, this distinction has no practical effect on the court's adjudication of the

motion, because "a motion under Rule 12(c) . . . is assessed under the same standard that applies to a Rule 12(b)(6) motion." Walker, 589 F.3d at 139 (citing Edwards, 178 F.3d at 243).

### D. 28 U.S.C. § 1447(c)

Paragraph (c) of 28 U.S.C. § 1447 provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under [28 U.S.C. §] 1446(a)." 28 U.S.C. § 1447(c). It further provides, consistent with Rule 12(h)(3), that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Id.; accord Fed. R. Civ. P. 12(h)(3).

### IV. ANALYSIS

#### A. Plaintiff's Causes of Action

Plaintiff's complaint alleges five causes of action against Litton: (1) breach of contract to modify plaintiff's first mortgage; (2) breach of the trial modification contract; (3) negligent processing of plaintiff's loan modification application; (4) breach of implied contract; and (5) fraudulently proceeding with a foreclosure sale of the Property. None of plaintiff's causes of action is alleged against Glasser; indeed, Glasser is only mentioned three times in plaintiff's complaint.

First, Glasser sent plaintiff a letter dated October 8, 2010, detailing the reasons why Litton terminated its Plan with him. Compl. ¶ 37 & Ex. D. Second, as noted above, Glasser notified plaintiff on October 15, 2010 of the impending foreclosure sale of the Property. Id. ¶ 38. Finally, plaintiff alleges that if Litton submitted to Glasser the requisite certification that plaintiff was ineligible for a loan modification pursuant to HAMP, then such certification "was a fraudulent certification as Plaintiff are [sic] eligible for the HAMP and all other available loss mitigation alternatives have not been exhausted." Compl. ¶ 62.

## B. Glasser's Motion to Dismiss

### 1. The Nature of Plaintiff's Allegations Involving Glasser

Glasser argues in its motion to dismiss that it is not properly joined as a party in the instant matter because plaintiff's complaint fails to allege any wrongdoing by Glasser or seek any relief against Glasser. Plaintiff filed no response to Glasser's motion, which is now ripe for decision.

As noted above, the Court's review of the complaint shows there to be no allegations of wrongdoing, either by act or omission, by Glasser. It cannot be said that any of the mentions of Glasser in plaintiff's complaint enumerated above constitute allegations against Glasser. First, Glasser's October 8, 2010 letter merely explained why Litton terminated

10

its Plan with him. Although plaintiff doubtless believes that Litton's actions in that connection were harmful to him, there are no allegations suggesting that Glasser's letter about such actions, in and of itself, harmed him. Likewise, plaintiff does not allege that Glasser's act of sending him the October 15, 2010 notice letter regarding the impending foreclosure sale of the Property was, in and of itself, harmful to him. Finally, plaintiff does not allege that Glasser's possible receipt from Litton of an allegedly fraudulent certification that he was ineligible for a HAMP loan modification was, in and of itself, harmful to him.

## 2. Whether Glasser Was Properly Joined

In light of the foregoing observations with respect to plaintiff's complaint, the Court turns to relevant case law to determine whether Glasser was properly joined in this matter by virtue of its status as substitute trustee and its corresponding authority—indeed, obligation—to schedule and conduct a foreclosure sale of the Property. Litton claims that Glasser was improperly joined by plaintiff for the purpose of precluding diversity jurisdiction in federal court. The burden is on the party claiming fraudulent or improper joinder to show that a claim could not be established against the non-diverse defendant even after resolving all issues of law and fact in the plaintiff's favor. Marhsall v. Manville Sales Corp., 6 F.3d

11

229, 232 (4th Cir. 1993). The removing party must establish that there is no possibility the plaintiff could establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. Payne v. Bank of Am., N.A., No. 3:09-cv-00080, 2010 WL 546770, at *3 (W.D. Va. Feb. 11, 2010) (citing Baltimore Cnty. v. Cigna Healthcare, 238 F. App'x 914, 920 (4th Cir. 2007)). A claim need not succeed to defeat removal; only a possibility of a right need be asserted. Wygal v. Litton Loan Servicing LP, Civ. Action No. 5:09-cv-00322, 2009 WL 2524701, at *2 (S.D. W. Va. Aug. 18, 2009).

Decisions diverge, based at least in part on various states' substantive laws regarding substitute trustees, as to whether the citizenship of a substitute trustee is properly taken into account in determining whether complete diversity of citizenship among the parties exists. Compare Larocque v. BAC Home Loans Servicing, No. 3-10-0787, 2011 WL 46363, at *1—2 (M.D. Tenn. Jan. 6, 2011) (finding that factual allegations against substitute trustee in the complaint precluded finding the trustee to be a nominal party and remanding the case to state court); In re Naef, No. 7:10-CV-197-LF, 2010 WL 5058383, at *1, *3—4 (E.D.N.C. Dec. 3, 2010) (concluding that "diversity jurisdiction does not exist" because "[b]oth the substitute trustees . . . and the . . . record owners of the property to be

12

foreclosed upon, are citizens of North Carolina," despite an argument by the record owners that the substitute trustees were not "the real part[ies] in interest in the foreclosure proceeding, and the court should therefore ignore [their] citizenship"); In re Foreclosure by David A. Simpson, P.C., Civ. No. 3:10CV112-RJC-DSC, 2010 WL 1838181, at *2 (W.D.N.C. Apr. 13, 2010) (finding there to be no diversity of citizenship where substitute trustee and property owner were both North Carolina citizens); Miller v. Chase Home Fin., LLC, Civ. Action No. 3:09-CV1503-K, 2010 WL 70089 (N.D. Tex. Jan. 6, 2010) (finding that defendants had not sufficiently established improper joinder of the substitute trustee under applicable Texas state law); Payne, 2010 WL 546770, at *3–7 (finding that defendants had not sufficiently established improper joinder of the substitute trustee, thus precluding diversity citizenship, and remanding the case to state court); Johnson v. Ocwen Loan Servicing, LLC, Civ. Action No. C-09-47, 2009 WL 2215103, at *2–4 (S.D. Tex. July 22, 2009) (finding that substitute trustees had not been improperly joined under Texas state law and remanding case to state court); Rodriguez v. Ocwen Loan Servicing, LLC, Civ. Action No. C-07-471, 2008 WL 65405, at *3-5 (S.D. Tex. Jan. 4, 2008), with Marsh v. Wells Fargo Bank, N.A., 760 F. Supp. 2d 701, 706–09 (N.D. Tex. 2011) (finding that substitute trustee had been improperly joined under Texas state law, ignoring the

trustee's citizenship for purposes of determining diversity jurisdiction, and denying the plaintiffs' motion to remand to state court); Cook v. Wells Fargo Bank, N.A., Civ. Action No. 3:10-CV-0592-D, 2010 WL 2772445, at *2–4 (N.D. Tex. July 12, 2010) (same); Delgado v. Bank of Am. Corp., 2009 WL 4163525, at *3–5 (E.D. Cal. Nov. 23, 2009) (concluding that substitute trustee's citizenship did not preclude diversity jurisdiction); Hawkins v. Wells Fargo Bank, N.A., Civ. Action No. 2:07CV399 LTS-JMR, 2008 WL 216529, at *1 (S.D. Miss. Jan. 23, 2008) (noting that, pursuant to Mississippi state law, "a substitute trustee . . . is a nominal party with no interest in the outcome of this litigation," and thus its "citizenship . . . must be disregarded for purposes of determining diversity jurisdiction"); Dempsey v. Transouth Mortg. Corp., 88 F. Supp. 2d 482, 484–85 (W.D.N.C. 1999) (finding a substitute trustee in a foreclosure-related litigation to be "clearly a nominal party at best" because the trustee "did not have . . . any interest in this suit" and the "complaint contain[ed] no factual allegations against" it, leading the court to surmise that it "may have been joined as a defendant solely to defeat diversity jurisdiction").

The theme derived from these divergent decisions is that the status of a substitute trustee hinges on the nature of the actions allegedly taken by the trustee, if any, and the type of relief sought against the trustee, if any. For example, if the

14

specific relief requested by a plaintiff cannot be granted without depriving the substitute trustee of legal title to the property at issue, then a court would be impaired in its ability to enter a final judgment that favors the plaintiff. Payne, 2010 WL 546770, at *3-5 (holding a substitute trustee to be properly joined when the plaintiff made extensive factual and legal allegations against the trustee and sought specific relief from the trustee; namely, setting aside a previously conducted foreclosure sale and re-titling the property at issue). But see Dempsey, 88 F. Supp. 2d at 484—85. However, "[j]ust because the trustee of [a] deed of trust could enforce something does not mean that it is a necessary party," especially in cases not "involv[ing] a title dispute," because the mortgage lender "possesses an independent right to pursue its rights under the" loan agreement. RTC Mortgage Trust 1995-S/N2 v. McMahon, 225 B.R. 604, 608 (E.D. Va. 1997), aff'd, 155 F.3d 560, 1998 WL 398824 (4th Cir. 1998) (unpublished per curiam table decision).

This Court's review of plaintiff's complaint above appears to distinguish it from the complaint in Payne, which included extensive and substantive allegations against the substitute trustee. The instant complaint appears to be far closer to the complaint in Dempsey, which merely noted the substitute trustee's citizenship, but did not make any substantive allegations against it. Since the scheduled foreclosure sale of

the Property did not, in fact, occur due to plaintiff's filing of the instant matter in state court, plaintiff obviously does not seek here, as did the plaintiff in Payne, to have the Property re-titled. Moreover, plaintiff raises no issue relating to title in any of his causes of action. As noted above, he claims no misconduct by Glasser, and does not request any relief that only Glasser could provide. Accordingly, it appears that both Glasser's motion to dismiss and Litton's claim that Glasser was improperly joined have merit, and the Court will therefore **GRANT** Glasser's motion and **DISMISS** Glasser from this matter.

### 3. Whether Glasser Is Merely a Nominal Party

As the district court noted in Payne, in addition to the question of improper or fraudulent joinder, there exists "a related but not identical doctrine" providing that "in the Court's inquiry into diversity jurisdiction, [the citizenship of] 'nominal' or 'formal' parties that have been joined are to be disregarded and only [the citizenship of] 'real parties to the controversy' are considered relevant. Payne, 2010 WL 546770, at *4 (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980)). The district court in Payne further noted that although the Fourth Circuit has not yet explicitly articulated a test for determining whether a party is "nominal" or "formal," other courts have regarded the standard as being essentially the

same as that for fraudulent or improper joinder.  Id.  In light
of this Court's conclusion above that Glasser was improperly
joined in this matter, and its corresponding grant of Glasser's
motion to dismiss, the Court need not proceed with a detailed
separate inquiry into whether Glasser is a "nominal" or "formal"
party, the citizenship of which may be ignored in determining
diversity.   Of course, were the Court to engage in such an
inquiry, the conclusion would be the same as that reached with
respect to improper joinder:  on the basis of the facts alleged
by plaintiff in his complaint, Glasser has no substantive role
in this matter, and would be "clearly a nominal party at best."
Dempsey, 88 F. Supp. 2d at 484–85.

### C.   Litton's Motion for Judgment on the Pleadings

#### 1.   Litton's Arguments

Litton's motion argues that plaintiff's claims invoking
HAMP fail for lack of standing to sue, both because HAMP
provides plaintiff with no private right of action and because
plaintiff was not the intended beneficiary of any contracts
between Litton and third parties.   Litton also argues that
plaintiff's claimed reliance on verbal representations by Litton
in connection with his causes of action violates the statute of
frauds, and that his fraud claims fail to plead fraud with
sufficient particularity.     Litton further argues that
plaintiff's claim that Litton breached of the Plan is flatly

17

contradicted by the documents upon which his complaint relies, and that, under Virginia law, plaintiff may not allege a negligence claim, sounding in tort, solely on the basis of the alleged contractual relationship between himself and Litton.

### 2. The Federal Dimension of Plaintiff's Complaint

As an initial matter, this Court concludes that, to the extent that plaintiff's complaint contains causes of action that could be construed as "arising under" the federal Home Affordable Modification Program ("HAMP"), it must be dismissed. This Court, consistent with the decisions of numerous other courts, has held that HAMP creates no private right of action. See, e.g., Fowler v. Aurora Home Loans, Action No. 2:10cv623, slip op. at 3–4 (E.D. Va. Mar. 31, 2011) (Davis, J.); Bourdelais v. J.P. Morgan Chase, Civ. No. 3:10CV670-HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) (collecting cases).

Were this Court's subject-matter jurisdiction in this matter premised solely on the federal questions that, according to Litton, plaintiff's complaint necessarily implicates, the foregoing conclusion would necessarily entail remanding plaintiff's state-law causes of action, because there would remain no federal claim to which the Court could anchor its supplemental jurisdiction. However, in light of this Court's conclusion above that Glasser was improperly joined, and should be dismissed from this matter entirely, this Court retains

18

subject-matter jurisdiction over the remaining state-law causes of action, notwithstanding the absence of a federal question, by virtue of the complete diversity of citizenship of the real parties in interest: plaintiff and Litton. Consequently, this Court may proceed to consider Litton's motion for judgment on the pleadings with respect to plaintiff's state-law claims.

### 3. Litton's Alleged Breach of Loan Modification Contract

Plaintiff alleges that Litton and he "mutually and voluntarily agreed to modify Plaintiff's existing first mortgage (the Note) in accordance with published HAMP guidelines and supplemental directives." Compl. ¶ 40. With regard to the formation of this alleged agreement, plaintiff states that Litton "solicited Plaintiff to apply for a HAMP loan modification," and in that solicitation, Litton "said it would process Plaintiff's application in accordance with the HAMP program if certain conditions were met." Id. ¶ 41. Plaintiff claims that Litton's "active solicitation constitutes an irrevocable offer to Plaintiff that if they filled out the appropriate application and submitted the proper paperwork, they would be properly and timely reviewed for a HAMP modification in accordance with the HAMP." Id. ¶ 42. Plaintiff further maintains that "[o]nce [he] submitted the required modification application and requested documents . . . and [Litton] accepted and began working on the review of that paperwork, a contract to

19

modify the Note pursuant to the published HAMP guidelines and supplemental directives was created." Id. ¶ 43. Plaintiff claims that Litton breached that contract by denying his request for a loan modification.

Since matters of contract are predominantly issues of state law, and plaintiff has not advanced any theory indicating that the law of Virginia is not controlling in this matter, the Court applies Virginia law in its analysis of plaintiff's contract claim. See Felder v. Casey, 487 U.S. 131, 151 (1988) (quoting Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945)) ("Under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), when a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court.'"). While the Court makes no determination as to whether, when applying Virginia law, Litton's "active solicitation constitutes an irrevocable offer to Plaintiff" to "properly and timely review[] [Plaintiff's application] for a HAMP modification," id. ¶ 42, even if such an offer existed, it would be insufficient as a matter of law to create "a contract to modify" plaintiff's mortgage. Id. 43.

It is clear, both from plaintiff's complaint and the face of the solicitation plaintiff received from Litton, that Litton's offer was merely an offer to consider plaintiff's

application for a loan modification, not an outright offer to modify plaintiff's mortgage, under HAMP or otherwise. Addressing the HAMP issue first, the Court notes that plaintiff alleged that Litton solicited him "to apply for a HAMP loan modification." Compl. ¶ 41. Although plaintiff further characterizes the loan modification allegedly offered by Litton as "a HAMP Trial Modification agreement," the first page of the solicitation, which was curiously and conspicuously omitted by plaintiff from Exhibit A to his complaint, explicitly provides that "[t]his modification is not a government Home Affordable Modification, and you will not be eligible to receive the benefits of the government program through this modification." Compare Docket No. 12 Ex. 3 at 1, with Compl. Ex. A (omitting first page). Assuming that there was an offer, and that plaintiff accepted that offer by providing Litton with the documentation it requested, such an acceptance cannot unilaterally enlarge the scope of Litton's initial offer to make a non-HAMP offer into a HAMP offer. Va. Hardwood Lumber Co. v. Hughes, 140 Va. 249, 257 (1924) (citations omitted) ("[T]he acceptance to conclude the agreement must in every respect meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing with these just as they stand.") (emphasis added).

With respect to the nature of the alleged offer by Litton, the Court also notes that the first page of the solicitation, which, as previously noted, was curious and conspicuously omitted from Exhibit A to plaintiff's complaint, starts by saying, **"You may qualify for a modification**," and goes on to say that "[i]f you qualify for this modification and comply with the terms of the Workout Plan, we will modify your mortgage loan and you can avoid foreclosure." Docket No. 12 Ex. 3 at 1 (emphasis added). Clearly, this was a mere offer to consider plaintiff's application.

Since no offer was made to modify the contract, no contract to that effect was created. Since no such contract was created, it could not have been breached by Litton. Consequently, plaintiff's breach of contract claim is without merit, and the Court will **DISMISS** it.[2]

---

[2] Plaintiff further alleges that "[d]ue to Defendant [Litton]'s breach of the contract to modify the Note, Plaintiff changed their position and suffered a detriment. Defendant induced Plaintiff, through Defendant's representations to rely in good faith on their mutual agreement to modify the loan . . . ." Compl. ¶ 49. To the extent that such allegation is made as a basis for an argument for relief under a promissory estoppel theory, plaintiff has failed to make the requisite showing. A cause of action based on promissory estoppel requires, inter alia, "a promise." Mongold v. Woods, 278 Va. 196, 202 (2009). Since, as concluded above, Litton never promised to modify plaintiff's loan, plaintiff cannot assert a cause of action based on promissory estoppel.

### 4. Litton's Alleged Breach of the Plan

In a similar vein, plaintiff's complaint also alleges that the Plan constituted a binding contract between Litton and himself, and that Litton breached the Plan by instituting foreclosure proceedings with respect to the Property. As Litton argues in support of its motion, the Court need not accept factual allegations in a complaint that are contradicted by the plain language of underlying documents upon which the complaint relies. See, e.g., Trigon Ins. Co. v. Columbia Naples Cap., LLC, 235 F. Supp. 2d 495, 499 n.2 (E.D. Va. 2002). As noted above, the first page of Litton's solicitation was not included by plaintiff in Exhibit A to his complaint. However, it clearly stated that if plaintiff failed to submit income documentation that was consistent with Litton's prior "discussions" with him, then plaintiff "may not qualify for this loan modification program." Docket No. 12 Ex. 3 at 1. Obviously, the proposed Plan was merely an offer to consider plaintiff's application.

As Litton further emphasizes, even if the Plan constituted a binding contract, as plaintiff claims, plaintiff nowhere alleges that he actually made all of the payments explicitly contemplated by the plain language of the Plan in a timely fashion. Plaintiff cannot assert a cause of action relating to the timeliness of payments that are nowhere alleged to have been

made. Consequently, the Court will **DISMISS** plaintiff's claim for breach of the Plan.

## 5.   Litton's Alleged Negligent Processing of the Application

As a third cause of action, plaintiff alleges that Litton was negligent in its processing of his loan modification application because it conducted such processing in a "convoluted and disorganized" manner. Compl. ¶ 54. Plaintiff claims that this negligence "eliminated any time or opportunity Plaintiff had to pursue other foreclosure avoidance options resulting in irreparable damage to the Plaintiff." Id. As to the duty that Litton allegedly breached by such negligence, plaintiff claims that "[b]y soliciting Plaintiff for a HAMP modification, and then contractually agreeing to modify the Note, Defendant [Litton] established a duty owed to Plaintiff outside the traditional relationship between Servicers and Borrowers." Id. ¶ 55.

Under Virginia law, to establish actionable negligence, plaintiff has "the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293 (2003). If plaintiff fails to meet his burden on any element, he has failed to support a cognizable negligence action. As to the "legal duty" element, ordinarily a duty owed to another party that arises solely from a contractual obligation is not

actionable in tort.  See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 558-59 (1998).  However, in certain circumstances a party can "show both a breach of contract and a tortious breach of duty."  Id.  "[A]n omission or non-performance of a duty may sound both in contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty."  Station # 2, LLC v. Lynch, 280 Va. 166, 171 (2010).  As the Supreme Court of Virginia has recently reiterated:

> "The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society."  "[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts."

Kaltman v. All Am. Pest Control, Inc., 281 Va. 483, 493 (2011) (quoting Filak v. George, 267 Va. 612, 618 (2004)) (internal citation omitted) (alteration in original).

In the present case, plaintiff has failed to allege a duty that is actionable in tort.  Instead, plaintiff has merely re-cast his breach of contract claim, which itself is without merit, as a negligence action sounding in tort.  According to the complaint, the duty owed to plaintiff arises from Litton "contractually agreeing to modify the Note."  Compl. ¶ 55.  As noted above, under Virginia law, a breach of contract may only

sound in tort if the contractual duty breached is also a duty imposed at common law. Since any obligations Litton might have had in processing plaintiff's application for a loan modification could only have arisen from the alleged contract between the parties, and thus do not flow from the common law, plaintiff has failed to allege any duty that could serve as the basis for a negligence claim. Accordingly, plaintiff's claim that Litton negligently processed his loan modification application is without merit, and the Court will **DISMISS** it.

## 6. Breach of Implied Contract

Plaintiff claims that Litton and he "have an implied contract in law based on the theory of unjust enrichment," because Litton "has received a benefit in the form of incentive money from the federal government," and "[b]y inducing Plaintiff into the agreement to modify the contract, [Litton] qualified for these benefits." Compl. ¶¶ 58-59. Plaintiff asserts that "[i]t would violate equity for [Litton] to retain those benefits without fulfilling its obligations to Plaintiff. [Litton] must adhere to terms [sic] of the contract implied at law, grant Plaintiff's loan modification, and allow Plaintiff to retain their [sic] home." Id. ¶ 60.

Plaintiff's argument in connection with this cause of action appears to be that he was an intended third-party beneficiary to Litton's participation in HAMP. As noted above,

however, the loan modification offered to plaintiff by Litton, by its very terms, was not offered under the auspices of HAMP. Moreover, even if such offer had been made under the auspices of HAMP, as discussed above, district courts have uniformly rejected the proposition that plaintiffs have standing to sue under HAMP, under a third-party beneficiary theory or otherwise. Accordingly, the Court will **DISMISS** plaintiff's breach of implied contract claim.

### 7. Fraud

Plaintiff's final cause of action against Litton alleges that Litton "is fraudulently proceeding with the foreclosure sale of Plaintiff's property." Compl. § VI. Plaintiff's fraud allegation consists entirely of the following two grammatically challenging paragraphs:

> Defendant [Litton] to [sic] certify, in writing, to the foreclosure attorney/trustee that Plaintiff were ineligible for the HAMP, as required by Supplemental Directive 10-02 concerning Certification Prior to Foreclosure Sale. Servicers are required to provide to the foreclosure/attorney/trustee a written certification that, "i) one of the five circumstances under the 'Prohibition on Referral and Sale' section of this Supplemental Directive exists, and ii) all other available loss mitigation alternatives have been exhausted and a non-foreclosure outcome could not be reached."

> If Defendant [Litton] submitted such certification to Defendant Substitute Trustees, then it was a fraudulent certification as Plaintiff are [sic] eligible for the HAMP and all other available loss mitigation alternatives had not been exhausted.

Compl. ¶¶ 61-62.

Under Virginia law, in order to plead fraud, a plaintiff must allege (1) the existence of a false representation; (2) of a material fact; (3) which was made intentionally and knowingly; (4) with intent to mislead; and (5) that the plaintiff relied on that misrepresentation to his detriment. <u>Sales v. Kecoughtan Hous. Co.</u>, 279 Va. 475, 481 (2010) (quoting <u>Elliott v. Shore Stop, Inc.</u>, 238 Va. 237, 244 (1989)). When comparing the allegations in plaintiff's complaint to the elements that must be pled in order to assert a cognizable fraud claim, the Court concludes that plaintiff has failed to plead sufficient facts to elevate his fraud claim to the level of a "plausible" claim, as required by the United States Supreme Court's decisions in <u>Twombly</u> and <u>Iqbal</u>. In making this determination, the Court need not go any further than the first requirement for a fraud claim: a false representation.

In the instant matter, plaintiff contends that <u>if</u> Litton made a certification to the foreclosure attorney or trustee regarding the plaintiff's ineligibility for a HAMP modification, that certification was fraudulent. The fact that plaintiff cannot even plead that this certification was actually made—not to mention the aforementioned fact that the loan modification offered by Litton to plaintiff was not under the auspices of HAMP—underscores the entirely speculative nature of plaintiff's

28

fraud claim. Moreover, since plaintiff is unsure of whether this certification was made, he is unable to allege that he relied on such a certification to his detriment. Since a misrepresentation of fact, and reliance on that misrepresentation, are two essential elements of a cognizable fraud claim, plaintiff has failed to satisfy the minimum pleading requirements necessary to survive a motion to dismiss under Rule 12(b)(6). Consequently, the Court will **DISMISS** plaintiff's fraud claim against Litton.

### D. Plaintiff's Motion to Remand

The Court's determinations above with respect to Glasser's motion to dismiss and Litton's motion for judgment on the pleadings render plaintiff's motion for remand moot, and the Court will **DENY** it on that basis. Despite the absence of a valid federal claim in plaintiff's complaint, in light of the improper joinder of Glasser, the Court properly retains jurisdiction over this matter by virtue of the complete diversity of citizenship between the real parties in interest and the manifest fact that the value of the Property exceeds $75,000. Consequently, the Court did not need to remand this matter to state court, but instead properly determined plaintiff's state-law claims.

29

## V. CONCLUSION

In sum, to the extent plaintiff's complaint implicates HAMP, it must be dismissed due to the lack of any private right of action thereunder. The Court also concludes that no contract to modify plaintiff's mortgage ever existed between plaintiff and Litton. Therefore, it could not have been breached. With respect to plaintiff's negligence claim, he has failed to show the existence of a duty that Litton owed to him in connection with the processing of his loan modification application. As a result, he has failed to allege a cognizable claim of negligence. Finally, the allegations supporting plaintiff's fraud claim are also inadequate, because he has failed to plead a misrepresentation on the part of Litton, and he has not shown that he relied upon any misrepresentation that could have existed. For all of the foregoing reasons, Glasser's motion to dismiss is **GRANTED**, Litton's motion for judgment on the pleadings is **GRANTED**, plaintiff's motion to remand is **DENIED** as moot, and this matter is **DISMISSED**, with prejudice.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/ Mark
_____
Mark S. Davis
United States District Judge

July 1, 2011
Norfolk, Virginia